## A. J. HALE v. GEORGE H. HESS & CO.

[FILED JULY 2, 1890.]

1. **Contract: RESCISSION: MEASURE OF DAMAGES.** G. H. H. & Co. contracted to furnish the heating apparatus in complete working order, to a specified degree of temperature, for the newly erected building of A. J. H., for the sum of $450. The owner terminated the contract, and refused to allow the contractor to proceed when the furnace and fixtures were ready to be put in place. *Held*, That, under the evidence, the measure of damages to the contractor was the profits under the contract only.

2. ———: EITHER PARTY MAY RESCIND: DAMAGES. A party to an executory contract has the right to rescind the contract, and terminate it wholly, without the consent of the other party, who is in no fault; the first party becoming liable to the other in any damages he may have sustained, or any compensation he may have earned, by reason of the rescission.

3. ———: ———: ———: PROBABLE PROFITS. If a contract for particular work is partly performed, and the employer puts an end to it without fault of the contracting party, he is liable for the profits to be made under the contract as well as for compensation for work already done.

ERROR to the district court for Gage county. Tried below before BROADY, J.

*A. Hardy,* and *R. S. Bibb,* for plaintiff in error:

The contract was executory. (*Fletcher v. Peck,* 6 Cranch [U. S.], 136.) One party to such a contract may rescind it without the consent of the other. (Bishop, Contracts [2d Ed.], sec. 837; *Clark v. Marsiglia,* 1 Denio [N. Y.], 317.) The latter cannot sue as on a completed contract; his remedy is in damages for what he has suffered in not being permitted to perform. (*Butler v. Butler,* 77 N. Y., 472.) After rescission and notice, the party not in fault must not proceed further and cause needless expense. (Bishop, Contracts, sec. 841; *Dillon v. Anderson,* 43 N. Y., 231; *Strauss v. Meertief,* 64 Ala., 299–307; *Chamberlain v. Morgan,* 68 Pa. St., 168; Addison, Contracts, secs. 588, 593.)

*W. S. Summers, contra:*

The contract was not executory, as the furnace was shipped subject to Hale's order, and the title had passed., It is certainly the prevailing doctrine that it requires both parties to rescind a contract. (*Davidson v. Keep,* 61 Ia., 218; *Nebraska City v. Gas Co.,* 9 Neb., 339; *Derkson v. Knox,* 30 N. W. Rep., 49.) Where it is vendor's intention to pass title, and vendee's to accept, the sale is complete. (*Sewell v. Eaton,* 6 Wis., 479.) Where vendor takes necessary steps to pass title, he may recover contract price. (*Ganson v. Madigan,* 13 Wis., 75; *Webber v. Roddis,* 22 Id., 61; *Cain v. Weston,* 26 Id., 100.) Hess & Co., as they were ready to perform, were entitled to recover the whole amount agreed upon. (Benjamin, Sales, sec. 784; *Thompson v. Alger,* 12 Met. [Mass.], 428; *Thorndike v. Locke,* 98 Mass., 340; *Pearson v. Mason,* 120 Id., 53; *Shawhan v. Van Vest,* 15 Am. Law Reg. [N. S.], 153, 160 and note.)

Cobb, Ch. J.

George H. Hess & Co. sued A. J. Hale in the district court of Gage county. They alleged in their petition that the defendant was indebted to them in the sum of $450, with interest at seven per cent per annum from January 1, 1887, due upon a certain contract attached to their petition as an exhibit; that the plaintiffs shipped the furnace, described in the contract, to the defendant; that the same was delivered in accordance with the terms of the contract, and that in all respects the plaintiffs have complied, and are ready and willing to comply, with the terms of said contract; that the defendant refused to receive the furnace and fixtures and refused to allow the plaintiffs to place the same in his building according to the terms of the contract; that plaintiffs now are, and at all times have been, ready and willing to comply with and complete said contract and put in and set up said furnace in accordance with the terms of the same; that the defendant refuses to receive said furnace and denies these plaintiffs access to his premises, and refuses to permit them to fulfill their contract in any manner whatever; that by the refusal of defendant to comply with the terms of the contract to be by him performed, and to permit the plaintiffs to fulfill the terms of the contract to be by them performed, they, the plaintiffs, have been damaged in the sum of $450, no part of which has been paid; and they pray judgment in said sum, etc.

CONTRACT REFERRED TO AS AN EXHIBIT TO PLAINTIFFS' PETITION.

"Beatrice, Neb., August 14, 1886.

"*A. J. Hale, Esq., Beatrice, Neb.:* We will furnish and place in your new store building one No. 80 Hess pure air steel furnace, together with five best black Japan registers, four connectings, with partition stacks and connecting pipes through the furnace, according to the plans and specifica-

tions of your architect, for the sum of four hundred and fifty dollars. The owner to furnish foundation and the necessary carpenter and brick work and provide a chimney with a good draft and proper ventilation for the building; we to supply such register faces for ventilation as are needed. The storeroom to have one large 30x30 register face and frame placed directly above furnace in floor, and each pipe to have damper, each pipe connected with register, and partition stacks to be of sufficient size to thoroughly warm rooms needed by same in most severe winter weather. It is understood that the work shall be of the best material and workmanship and fully up to our standard of custom jobs. As the success of heating depends so much upon the proper size and location of registers, pipes, furnaces, etc., it is understood that we are to have full direction and control of the work to be done in connection with our contract, and to have the right to supply another furnace of our own make, or one of larger size, at our own expense, or to make other changes as shall ensure successful heating. We therefore agree to heat the rooms connected with the furnace from 65° to 70° above in ten below zero weather when the house is finished and made reasonably tight. Complaints, if any, to be made within one year. It is understood that the furnace shall be operated and managed according to our printed directions.

"GEO. H. HESS & CO.,
"Per I. F. SEARLS.

"I hereby accept the above proposition and agree to pay for the same when the work is completed according to contract.                    A. J. HALE."

The defendant answered, denying that he was indebted to the plaintiffs as alleged in their said petition, in the sum of $450, or to any amount whatever. He also denied that plaintiffs delivered to him the furnace described in the petition, or that he, the defendant, ever accepted said fur-

nace. The defendant admitted that he signed the contract set up in the petition, but for a second defense he avers that the plaintiffs, contrary to the agreement and the contract, shipped said furnace direct to the said defendant, and defendant refused to take the same from the depot, or to become liable for the same, for that he was not to accept nor become liable for the same until he should have suitable opportunity to try the same, and ascertain whether or not it was as represented to be by the plaintiffs. And for a third defense the defendant averred that the plaintiffs have failed and neglected to perform the conditions of said contract by them to be kept and performed, and the defendant further denied each and every allegation of said petition not in said answer admitted.

The plaintiffs' reply was a general denial of every allegation of new matter contained in the answer.

There was a trial to a jury, with a verdict for the plaintiffs in the sum of $440. The defendant's motion for a new trial being overruled, judgment was rendered for the plaintiffs, and the cause is brought to this court on error. So many of the assignments of error as are deemed important will be examined in their order.

At the term of court at which the cause was tried, and before the same was called for trial, defendant's counsel applied to the court for a continuance of the cause to the next term, on the ground of the absence of the defendant from the state. Said application was based upon the affidavit of R. S. Bibb, one of the attorneys for the defendant, the substance of which affidavit was that before the commencement of said term W. S. Summers, one of the attorneys for the plaintiffs, came to said affiant and asked him if he would agree to continue the cause over said term of court; that affiant stated that he would; whereupon Mr. Summers stated that he would write to his clients; that thereupon affiant stated to A. J. Hale, defendant, that he had made said arrangement, and upon such statement Mr.

Hale left Gage county to go to Michigan upon a visit with his wife. That it was affiant's understanding that said cause would not be tried at said term of court, and that he was so led to believe from the statement of Mr. Summers, who came to affiant's office in regard to the matter; that it would be unsafe to proceed to trial without the attendance of the defendant, etc. The application was denied, which is assigned for error.

In the case of *Ingalls v. Nobles*, 14 Neb., 272, the court laid down the law of continuance as follows. I quote from the syllabus:

" Ordinarily, the decision of motions to continue causes is left to the discretion of the particular court to which they are addressed. It is only where such discretion has evidently been exercised unwisely or abused, to the prejudice of a party, that a reviewing court will interfere.

"2. The statement of facts in an affidavit for a continuance should be specific of acts done, or of excuses for not doing them, and given with such particularity that an indictment for perjury would lie in case of its being false."

Measured by the rule laid down in the second clause of the syllabus, the affidavit falls far short, but were the facts stated with never so great particularity it would have presented a case for the discretionary actions of the court. Moreover, it is apparent that, taking the most favorable view of the facts stated in the affidavit, they did not amount to more than a verbal stipulation made by counsel out of court; and I do not remember a case in which a reviewing court has held it error in a trial court to refuse to enforce a verbal stipulation made out of court.

Upon the trial the plaintiffs offered in evidence the contract or proposal and acceptance, attached as an exhibit to the petition. They introduced John A. Forbes as a witness, who testified that he was acquainted with the parties; that he was present at the signing of the contract; that he was acquainted with the building " into which the furnace and

fixtures were to go;" that he knew Mr. Colby, who was superintendent of the building, and who had " notified us that the building was ready, and to hurry up; or, rather, that they were anxious for us to have the furnace here;" that Armacost and witness were, at that time, agents for the plaintiffs; that defendant had told the witness at different times that to do anything that Colby ordered would be satisfactory, that he had left everything with Colby as to the building and furnace.   Colby told witness that he was ready for the furnace, and was anxious to have it here and put in; that was some time before October 1, 1886, between the date of the contract and October following.   It was before the furnace was received here, but witness did not know how long the furnace was on the road.

Plaintiffs here offered in evidence a letter, which was received and marked Exhibit B.

" BEATRICE, NEB., Oct. 20, 1886.

"*Geo. H. Hess & Co.:*   DEAR SIR—The furnace has arrived at Beatrice for A. J. Hale's building.   Send on your man to put it in as agreed.
" Y's respectf'y,          J. S. COLBY, *Supt.*"

The witness Forbes, continuing his testimony, stated that soon after the date of the letter he had a conversation with Mr. Hale about the furnace, and about putting it in; that Hale stated that he bought the furnace and presumed it was all right; that he would admit that Gibbs was here as an expert to put it in, but inasmuch as they had sent him a bill of the furnace, which he construed to be a dun for the price of it, and had asked him to pay the freight on it, he would not receive it, and would not have it put up in his building; that he was aware that he was good for it, but he would not pay it until they got a judgment. This was in the presence of Gibbs, the expert, who had been sent on to put up the furnace.

It further appears from the testimony of the witness,

that the plaintiffs did not finally insist upon his paying the freight, but claim that that demand was originally made merely as a business memorandum. Witness further stated that the furnace was offered to be put up in defendant's building, but that he objected, and would not have it.

Plaintiffs also called F. M. Gibbs as a witness, who testified that he was a salesman and furnace setter in the employ of plaintiffs; that plaintiffs shipped the furnace of the size and number called for in the contract, marked Exhibit A, to Mr. Hale, the defendant, at Beatrice, Nebraska. It arrived in this depot, here, some few days before November 5, 1886; that witness was there in the employ of plaintiffs for the purpose of putting up the furnace; that he hired a dray, took the furnace up to the building, and defendant refused to have it put in. Witness inquired his reason for refusing; if the contract was not straight, and if he had not contracted for it, and he said he had, and that it was his signature shown him on the contract, which witness had, but that he was indignant over the matter of sending out the bill and charges for freight, and would not pay for the furnace nor allow it to be put up in his building. Witness told him it was customary, to a great extent, when shipping goods, to send the party consigned to, the bill of freight, to be deducted from the price. He replied " that might be our way and everybody else's, but he wouldn't do it." Witness told him that plaintiffs had already paid the freight, and that the statement might be torn up if he was not pleased with it; that there was no money to be paid until the furnace was placed, according to contract; that the plaintiff did not expect a dollar from it; that it was customary, if he paid the freight, to deduct it from the bill, as we had done with many customers.

The witness was asked what expense the plaintiffs were put to and answered, there is cartage of No. 80 casting, on board the cars; No. 80 furnace, $125; one register-face border, $5; four 10x14 registers and borders, $9; one

4

6x14 face, four 4½ face, $1 ; paid Searles the cost of sell-
ing, $45 ; freight to Beatrice, $28.65 ; two cartages, $4 ;
that had witness set the furnace up, would have cost $50
more.

The witness Forbes was recalled by plaintiffs and testi-
fied that it was the understanding between Searles and
Hale that the furnace should be shipped directly to Hale.
He also stated that "that was the agreement," but did not
state when, or by whom, the agreement was made.

The plaintiffs also introduced the deposition of John F.
Searles, from which it appeared that he was agent for the
plaintiffs from March 1, 1885, to February 1, 1887, and
that on August 14, 1886, the deponent sold a furnace for
the plaintiffs to the defendant, to be used in a new store
building to be erected, not then completed ; that the price
agreed upon was $450, as per copy of the contract attached
to the deposition, and the same as the original herein
set forth.    The deponent stated that the furnace was at
Beatrice as soon as the defendant was ready for it; that
deponent sent a man from Lincoln to put it up, and he
telegraphed back that the defendant would not receive it;
the man was F. M. Gibbs.    On receipt of the telegram
deponent went to Beatrice and found the building not com-
pleted, only the first rough flooring being laid on the ground
floor ; that deponent took the furnace and fixtures to the
building and left them on the back porch, except the regis-
ters, which he placed on the inside of the building; that he
went to the house of defendant to find out if he would
allow him to put the furnace in, and asked the defendant if
he had changed his mind as to having the furnace put in?
He replied that he had not, and that the furnace was never
going in there.

The court, of its own motion, instructed the jury as fol-
lows, which is assigned for error :

"I. The plaintiffs bring their action on the contract
offered in evidence, and allege that they complied with their

part of the contract until defendant refused to permit them to further comply therewith, and that they were ready and willing to proceed in compliance with the contract to its completion, but that defendant wrongfully prevented their further compliance with the contract; that defendant refused to comply with his part of the contract; that plaintiffs are damaged by defendant's breach of the contract. The defendant in his answer denies all the averments of plaintiffs' petition, except the making of the contract attached thereto.

"II. The burden of the proof is upon the plaintiffs by a preponderance of the evidence. If they have proved the material averments of their petition by a preponderance of the evidence, they are entitled to recover, but unless they have done so, the defendant is entitled to a verdict.

"III. If the plaintiffs demanded of defendant payment of the freight on the furnace, that was something defendant was not obliged, by the contract, to do, and he had a right to refuse to do so, but that would not give him the right to refuse to permit the plaintiffs to proceed with a compliance on their part of the contract, nor would it give him a right to refuse to comply with his part of the contract.

"IV. The contract provided that the plaintiffs should place the furnace in defendant's storeroom. If defendant wrongfully prevented plaintiffs from putting the furnace in defendant's storeroom, and plaintiffs' men trying to do so, and actually did, except as wrongfully prevented by the defendant, comply with the contract, plaintiff had the right to take the furnace as near to the place as defendant would permit, in which case the defendant would not have the right to object because it was not taken nearer, nor because the plaintiffs did not take it anywhere else, provided the plaintiffs exercised such care and diligence in the handling and leaving of the property, for its preservation, as a person of ordinary care and prudence would do under like

circumstances.   It is proper, however, to call your attention
to the fact that the answer makes no claim of set-off or
counter-claim on account of plaintiffs' negligence or mis
conduct in handling the furnace.   This matter then arises
only so far as it is involved in the question as to whether
plaintiffs are guilty of any breach of their contract.

"V. If the plaintiffs recover, they should recover the
amount of the contract price less the reasonable cost of
doing the part unperformed by them at the time they were
prevented from proceeding further under the contract, with
interest from that time at seven per cent per annum.

" VI. There is no question of rescission of contract raised
in the pleadings.   A contract cannot be rescinded by one
party only.   It takes two to make a contract, and two to
rescind the same.   A rescinder amounts to a new contract,
that the former contract shall no longer be in force.   One
can make a breach of contract, but it takes both the parties
to make a rescission of the contract.   Neither the petition nor
the answer alleges the rescission of the contract.   The lead-
ing questions involved are whether the plaintiffs have com-
plied with the obligations of the contract on their part to
be performed, so far as the defendant would permit, and
whether the defendant has made any breach of the contract
on his part to be performed."

The following instructions were asked by the defendant
and refused by the court, which is also assigned for error:

" I. The court instructs the jury that, if they believe
from the evidence that any witness has willfully sworn
falsely respecting any material matter in the case, then the
jury may disregard the testimony of such witness, except
as to matters wherein he is corroborated by other witnesses
or testimony.

" II. That under the proofs and pleadings of this action
the plaintiffs cannot recover, and that consequently you
must find for the defendant.

" III. That when notice of the rescinding of a contract

is given to such an agent or employe of one of the parties as is authorized to stand in his place and represent him in his business, or in the particular branch of it connected with the subject-matter of the contract, it is sufficient, though such notice is not brought home to the party himself.

"IV. That after a contract has been entered into between two parties, and notice is given by one of them that the contract is rescinded on his part, he is liable for such damages and loss only as the other party has suffered by reason of such rescinding of the contract, and it is the duty of such other party, upon receiving such notice, to save the former, so far as it is in his power, all further damages, though the performance of this duty may call for affirmative action on his part.

"V. That if they believe that if the defendant notified the plaintiffs, or their authorized agents, before any attempt to deliver the furnace in question, or, at such attempt, that the defendant would not take and receive such furnace, and the plaintiffs thereafter, and without any acceptance of said furnace by defendant, left the same in the alley and allowed it to be injured by exposure, and its value deteriorated or destroyed, then the plaintiffs cannot recover for the contract price.

"VI. That notwithstanding they may believe that the plaintiffs shipped the furnace in question, under the contract, in evidence, in good faith, to perform their part, and still if they further find from the testimony that the defendant refused to take and accept the furnace, and refused to allow it to be placed in his building, and notified plaintiffs that he would not pay for it until the plaintiffs got a judgment therefor, this conduct on the part of the defendant was a breach of his contract, and notwithstanding this the plaintiffs could not then dump said furnace in the alley and allow the same to become worthless and then sue for the contract price thereof. They should have

stopped at once when notified, and they cannot recover for any expenses incurred or damages sustained after such notice.

"VII. That if they find from the evidence that the defendant committed a breach of the contract by refusing to accept the property, then the defendant is not liable for the contract price of the furnace in this action.

"VIII. If the defendant refused to comply with his contract, by refusing to let the plaintiffs put the furnace in his building, and by refusing to go on further with his contract, and this while the furnace was in plaintiffs' possession, then it was the duty of the plaintiffs to take care of the furnace and not suffer it to be lost or to become worthless through their acts, and if they did allow it to become of little or no value of their own accord, then they cannot recover the purchase price thereof in this action."

There are several important questions presented by this record. The case is not, as I understand it, an action for the sale and delivery of goods; neither is it for the manu- facture of machinery by the plaintiffs for the defendant, but is rather upon a special contract to furnish and set up, in the building of the defendant, a furnace, with registers and fixtures for the purpose of heating the store-room and building.

It does not appear from the terms of the contract, or from the evidence, that this furnace and its fixtures were agreed to be, or were, in fact, manufactured by the plaintiffs specially for the defendant, but rather that the articles were on hand, in store, and in possession of plaintiffs at Chicago, and were agreed to be transported by them to defendant's building at Beatrice, Neb., there to be set up in the building, put in successful operation and made to heat the building, under certain conditions, to a stated degree of atmosphere. It is agreed that the plaintiffs performed their part of the contract up to a certain point, that they had the component parts of a furnace and heating appara-

tus, answering the general description of that they contracted to furnish, at the railroad depot at Beatrice, when the defendant sought to put an end to the contract and its further performance by peremptorily refusing to accept the furnace or to allow the plaintiffs to set it up in his building.

The questions upon which the case, as now presented, turns, as I view it, are: What were the rights of both parties under the circumstances? Could the defendant rescind the contract, refuse to go further under it, and, if so, what was the remedy and measure of damages to the plaintiffs on that account? Could they treat the furnace and fixtures as the property of defendant, and recover of him the contract price, less the cost of setting the same up, or must they recover, if at all, upon the breach of contract?

The court, in the instructions complained of as error, took the former views. It charged the jury in the sixth instruction that there was no question of the rescission of the contract raised in the pleadings, and stated to the jury "that a contract cannot be rescinded by one party only; that it takes two to make a contract, and two to rescind a contract; that a rescinder amounts to a new contract that the former shall no longer be enforced; that one can make a breach of a contract, but it takes both the contracting parties to make a rescission of the contract."

While there can be no doubt that the doctrine of this instruction is supported by many authorities and decisions, upon a careful review of all the authorities cited I am not able to agree with the court in its application to the case at bar. It is true that the defendant in his answer does not, in terms, allege that he rescinded the contract, but he does allege that the plaintiffs, contrary to the agreement of the parties, shipped the furnace direct to defendant, and that defendant refused to take the same from the depot, and became liable for it until he should have an opportunity to

try it and see that it was suitable as agreed upon by the plaintiffs. The plaintiffs in their evidence proved that while the furnace and fixtures were at the railroad depot defendant declared to their agents that, for the reasons imperfectly set out in his answer, he would not accept the furnace, nor permit it to be set up in his building. This, I hold, in law, amounted to a rescission of the contract, if it be competent, as it appears to be, for one party alone to rescind a contract.

Bishop, in his commentary on the law of contracts, sec. 837, says that "the proposition is sound in principle and sufficiently supported by authority, though more or less may be found in the books against it, that one party alone, with no consent from the other, who is in no fault, has, at law, the power—not to be exercised without liability for damages, but still the power—to rescind any executory contract. If this were not so, one might be ruined by an undertaking the carrying out of which a change in circumstances rendered highly inexpedient or practically impossible." This authority is cited by plaintiff in error. It commends itself to my judgment, is supported by the reasoning of the author, which follows the text cited, with the reference to many authorities, and is believed to be the true doctrine of the modern cases.

If the power to rescind exists in a party to a contract as a matter of law—bearing in mind that no rescission is claimed to be effectual to deprive another party to the contract of any right or compensation he may have earned by virtue of it, or of any damages to which he may be entitled by reason of the breach of the contract by the rescinder, if this right is one of law—then it would not be incumbent on the party exercising it to give any reason or excuse therefor. But, were reasons to be given, it does not appear that the defendant was entirely without one. The plaintiffs, as we have seen, had agreed, for a consideration in money, to furnish and place in successful opera-

tion the furnace and heating apparatus for defendant's building, reserving to themselves the right to supply another of their own make, or one of larger size, at their own expense, or to make other changes to insure successful heating, agreeing to heat the rooms in connection with the furnace from sixty-five to seventy degrees above in an atmosphere of ten degrees below zero. As appears from the bill of exceptions, after entering into this contract, and probably a half month before the arrival of the furnace at Beatrice, the plaintiffs sent to the defendant the following bill payable:

"CHICAGO, October 14, 1886.

" Bought of GEO. H. HESS & Co.

"MR. A. J. HALE, Beatrice, Neb.

"1 No. 80 Furnace, with Reg. and connections, as per contract, $450.

"All goods are shipped at 'Released rates of freight' at owner's risk of breakage, unless otherwise ordered.

"TERMS.—All accounts subject to sight draft at maturity."

The furnace and fixtures were shipped to the defendant at his expense for freight and railroad charges. This was at least an apparent departure from ordinary fair dealing by the plaintiffs, which challenged the suspicions of the defendant, as it was well calculated to do, that the plaintiffs were seeking an advantage over him. And where no legal justification is required, it would seem to have been a moral justification of the defendant in entering upon a prompt rescission of the contract, as he did, in such manner that while he subjected himself to compensation and damages to the plaintiffs for all that they had performed under their contract, he was rid of all further dealings and complications with them.

By the fifth instruction the court charged the jury that if the plaintiffs recover, they should recover the amount

of the contract price, less the reasonable costs of doing the part unperformed, at the time they were prevented from proceeding further under the contract, with interest from that time at seven per cent.

I take occasion to remark that the law of damages has been for a considerable period in the course of growth and expansion; its earlier rules of application have been subjected to frequent judicial review with the advantage of the experience of the past, and the suggestive aid of new interests demanding consideration, and new forms of injury seeking remedy and redress. Sutherland in a late work on Damages, vol. 1, page 132, thus states the condition of the law in such cases:

" If a contract for particular work is partly performed and the employer then puts an end to the undertaking, recovery may be had against him, not only for the profits the contractor could have made by performing the contract, but compensation also for so much as he has done towards performance. Preparations for performance, which were a necessary preliminary to performance, or within the contemplation of the parties as necessary, in the particular case, rest upon the same principle."

To this principle the author cites numerous cases, and among others, that of *Derby v. Johnson*, 21 Vt., 17. According to the syllabus in the case the parties entered into a contract in writing, by which the plaintiffs engaged to do all the stone work, blasting, and masonry upon three miles of railroad at certain specified prices by the cubic yard. The plaintiffs entered upon the performance of the contract, and, while so engaged, the defendants gave them an unconditional direction to leave the work, and to do nothing more under the contract; and the plaintiffs left immediately. It was held that this could not be treated as a mutual relinquishment of the contract, but as an exercise of a right, which by law belonged to the defendants, to put an end to the contract, leaving themselves

liable, of course, for all consequences resulting from such breach of the contract upon their part.

In such cases the plaintiffs may elect to treat the contract as still existing and binding upon the defendants, and may recover for the work performed at the contract prices, and for all damages incurred in consequence of the discontinuance of the contract by the defendants.

Also the case of *Danforth v. Walker*, 37 Vt., 239, where the plaintiffs contracted to deliver the defendant a quantity of potatoes during the winter, as called for by defendant. Before they were all purchased by plaintiffs the defendant notified them by letter not to purchase any more until they should hear from him, which order was not subsequently countermanded ; and it was held that the letter was not a rescinding of the contract, but a refusal to receive any more potatoes upon it than the plaintiffs had on hand, or had already purchased. It was also held that in executory contracts a party has the power to stop the performance on the other side, by an explicit order to that effect, by subjecting himself to such damages as will compensate the other party for being stopped in the performance on his part, at that point or stage in the execution of the contract.

And in *Friedlander v. Pugh*, 43 Miss., 111, the court, in the syllabus, state that it is by no means a sound doctrine of law, or of morals, that when one party to a contract is hindered from full performance by the other, the one obstructing can, in all cases, be held liable in damages to the extent of the entire price agreed upon for full performance. In such case the true rule, resting upon the best authority and the soundest reasoning, is that the just claims of the party so hindered are satisfied when he is recompensed for the part performed, and for his actual loss as to the part unperformed.

Also in the case of *Polsley v. Anderson*, 7 W. Va., 202, a case of interest to lawyers, as it concerns attor-

neys' fees. Polsley & Son entered into a contract with Anderson that they, with W. H. Tomlinson, Esq., all attorneys at law, would prosecute a certain suit in chancery pending in the circuit court, wherein defendant was complainant and the heirs at law of John Anderson, deceased, were defendants, for the enforcement of specific performance of a contract for the conveyance of land between John Anderson, in his lifetime, and the defendant. The defendant agreed that the plaintiffs and Tomlinson should be paid for their legal services $100 each, and if the result was in favor of defendant, $300 each; in all $600. The plaintiffs and Tomlinson prosecuted the suit and fulfilled their part of the contract in good faith. The defendant, of his own motion, caused the suit to be dismissed, without the consent of his counsel, and thereby hindered and prevented the further prosecution of it. The court charged the jury, in effect, that if they were satisfied, from the evidence, that the facts were as stated in the plaintiffs' declaration they should find for the plaintiffs in the sum of $300, the amount of the contract. The supreme court, by a lengthy opinion referring to many of the cases cited by our author Sutherland, reached the conclusion that there had been a misdirection of the jury in the court below, and reversed the judgment.

We have seen that, in our view, the defendant had the right to rescind, or to stop the further performance of the contract, and that he did so while the material of the furnace and accessories were still at the railroad depot, and that he refused to accept any part of the same. And while it will not be denied that the plaintiffs did what they could to deliver it, yet, as he refused to receive it, and so notified the plaintiffs before it was taken from the depot, he never did receive it, in law or in fact. As has been stated, the defendant, by pursuing this course, assumed the burden of paying all such sums as the plaintiffs had earned, and all damages which they had sustained in the execution of the contract, and consequent of its rescission.

We have also stated that in such a case the party hindered from going on with the contract was entitled to the profits which he would have realized had he been suffered to complete it.     That is an important element in this instance, as it appears from the bill of exceptions that the profits under the plaintiffs' proposal were as more than two to one to the value of the articles to be furnished, or of the services to be rendered.     The plaintiffs' witnesses testified that the furnace and all the accessories placed upon the cars at Chicago were worth, according to the plaintiffs' bill of prices, $140.     The contract price for the furnace complete and in successful operation, was $450.     Fifty dollars was the amount testified to by the plaintiffs' witness Gibbs as the pay he was to have received for setting up the furnace. Four hundred dollars may be then assumed as the price of the furnace and fixtures at the railroad depot.     From this deduct the cost on cars at Chicago, $140, and $260 is the remainder, which, taking the furnace at Beatrice, where it was to be delivered, and accounting nothing " for released rates of freight on it from Chicago," is wholly profits on the contract.     This, I think, is all that the plaintiffs are entitled to recover of the defendant in the transaction ; and while their petition but imperfectly states such cause of action, yet, as the defendant's answer is likewise inexact, I think the plaintiffs are entitled to their option to accept that amount to avoid further litigation.

The 1st and 2d instructions asked by defendant were, I think, properly refused; the evidence not justifying the court in giving them.   The other instructions asked for by defendant fairly present the law, as I understand it, and should have been given by the court.

The judgment of the district court will be reversed, and the cause remanded for further proceedings, unless the defendants in error shall, within sixty days from the date of the entry of this opinion, file in this court a remittitur in the sum of $180, as of the date of the judgment of the

district court, but in case such remittitur be filed within
the time stated, the judgment will stand

AFFIRMED.

THE other judges concur.