MERCY RENFREW, EXECUTRIX, v. WILLIAM M. WILLIS.

[FILED SEPTEMBER 29, 1891.]

1. **Petition:** FAILURE TO STATE CAUSE OF ACTION: VOLUNTARY PAYMENT. A petition of the plaintiff alleging overpayments to the defendant, under a contract of lease and rental, which from the evidence were voluntary payments, *held*, not to state facts sufficient to constitute a cause of action.

2. ———: ———: ANSWER NOT A WAIVER. If the facts stated do not constitute a cause of action, filing an answer by defendant is not a waiver of the defects. (7 Neb., 240; 13 Id., 255.)

3. ———: ———: A DEFECT in a petition which would be fatal to recovery may be taken advantage of at any time. (17 Neb. 572.)

4. **Voluntary payments** cannot be recovered back. (9 Neb., 152.)

5. **Money paid by mistake** may, in some cases, be recovered back in an action at law, but in such cases the mistake must be pleaded and proved. (15 Neb., 50.)

ERROR to the district court for Adams county. Tried below before GASLIN, J.

*Batty, Casto & Dungan,* for plaintiff in error.

*C. H. Tanner, contra.*

COBB, CH. J.

The plaintiff below, on December 6, 1888, alleged that on the 18th day of February, 1886, in the county of

Adams, this defendant and plaintiff entered into a written agreement and contract, the following of which is a true and correct copy:

"This writing witnesseth, that Sylvester Renfrew and William M. Willis, of the county of Adams, state of Nebraska, hereby covenant and agree that if the said Willis shall well and truly make the payments as hereinafter written and set forth to be made by him—each and all—when the same shall become due and payable, and faithfully perform all his part as set forth in this writing, he shall be privileged to occupy and use all that part of sections 25-10-9 and 25-10-10 lying north of the south channel of the Platte river in Hall county, Nebraska, for the term of five years, from and after the first day of March, 1886, and no longer. In consideration of which privilege and use, and as rental therefor, the said Willis hereby agrees to pay to the said Renfrew eight hundred dollars per annum, to be paid on or before the last day of December of each year, to-wit: Eight hundred dollars on the 31st day of December, 1886, and eight hundred dollars on the 31st day of December of each year thereafter, until and including the year 1890. And as early as the first day of March of each year, to execute and deliver to the said Renfrew full and ample security for the payment of the rental of that current year, by mortgage or otherwise, that shall be satisfactory to the said Renfrew.

"Said Willis shall, as a further consideration for the use of said premises, deliver to the said Renfrew ten tons of good hay in stack, on the place, from each year's cutting, to be removed at the pleasure of the said Renfrew. It is further agreed that the said Willis shall mow the grass on the land lying south of the pasture fence, and west of the railroad, each year for hay, wherever the willows do not render the mowing of the same impracticable, and properly stack and care for the hay thereon, and any willow patches not practicable for mowing may be plowed and cultivated

to exterminate the willows, then seed to tame grass, and such willow patches not mown or plowed by said Willis during the two first years, may be plowed and used by said Renfrew during the balance of this agreement, without otherwise effecting or changing the terms or payments of rental. Said Willis shall not make any changes in the buildings or fences now on the place other than necessary repairs; nor shall he make any repairs or improvements on said premises at the expense of said Renfrew without his written consent thereto.

"It is especially agreed by the parties hereto, that in case the said Willis shall fail to make any or either of the payments as above written when the same shall become due and payable, or to give the securities therefor, at the time and in the manner set forth, to the satisfaction of the said Renfrew, then, and in that case, the said Renfrew may at his option declare this agreement forfeited by the said Willis, and re-enter and take full possession of said premises with or without due process of law. And from and after the time of such failure on the part of said Willis, his right to occupy and use the premises, or any part thereof, shall cease. *Provided,* That the right to so declare forfeiture and re-enter and take possession shall in nowise bar the said Renfrew from recovering any unpaid rental that may have accrued at the time of regaining such possession, or any damage he may have sustained by reason of such failure on the part of the said Willis. Said Willis shall so watch and care for the premises and the buildings, fences, wells, windmills, and tanks, etc., thereon as to prevent unnecessary waste or decay. He shall not lease or let the premises or any part thereof, to any person or persons whomsoever without the written consent of the said Renfrew. He shall at the expiration of five years, as above written, vacate the premises to the said Renfrew in good condition and without notice.

"Witness our hands this 18th day of February, 1886.

"SYLVESTER RENFREW.

"W. M. WILLIS.

"Attest:

"CLARA B. PARR."

Second—That under and by virtue of said agreement, the plaintiff entered upon and took possession of the premises described in the same, on the first day of March, 1886, and remained in possession of said premises for the period of two years from said first day of March, 1886.

Third—That during the said time the plaintiff paid and delivered to the said defendant the following sums of money and property, to-wit: During the year 1886, from the first day of March thereof, up to and including the fourth day of July, 1887, hay and cash to the amount of $800, the same being rent for said premises under the contract aforesaid.

| | | |
|---|---:|---:|
| October 8, 1887, cash | $300 | 00 |
| March 8, 1888, cash | 71 | 05 |
| March 10, 1888, cash | 175 | 00 |
| March 10, 1888, note of Stewart and Benedict for $261, discounted nine per cent, balance ... | 237 | 51 |
| March 14, 1888, cash | 1,519 | 66 |
| March 20, 1888, draft on Doniphan Bank | 145 | 00 |
| March 21, 1888, cash | 50 | 00 |
| April 7, 1888, cash | 50 | 00 |
| April 7, 1888, work and labor in 1887–8 | 24 | 00 |
| Total | $3,372 | 22 |

Fourth—Plaintiff further alleges that the money was paid to the defendant, and the labor was done and performed by the plaintiff for the defendant at defendant's special instance and request, by virtue of the contract and agreement aforesaid.

Fifth—That of the money paid by the plaintiff to the defendant, the defendant is entitled to a credit of $1,600

and no more, for the rent of the premises for the period of two years beginning on March 1, 1886, and ending on March 1, 1888.

Sixth—That the balance of said money, to-wit, $1,772.22 is wholly due and unpaid from the defendant to the plaintiff.

The defendant answered that she admits the making of the lease mentioned in said petition.

Further answering, says that the plaintiff only occupied said premises two years and on account of the rent there was due the defendant sixteen hundred dollars in money and twenty tons of hay; that said twenty tons of hay was reasonably worth the sum of one hundred and ten dollars.

The defendant therefore says that there was due her on account of rent of said premises described in said lease the sum of seventeen hundred and ten dollars.

The defendant further says that the said plaintiff, for a valuable consideration, executed and delivered to the said Sylvester Renfrew, during his lifetime, the following promissory notes, to-wit:

"$200.            HASTINGS, NEBR., April 9, 1887.

"One year after date, for value received, I promise to pay to Sylvester Renfrew, or order, two hundred dollars, with interest thereon at the rate of ten per cent per annum from date until paid.            WM. M. WILLIS.

"$650.            HASTINGS, NEBR., February 26, 1886.

"On or before the 26th day of February, 1888, for value received, I promise to pay to the order of Sylvester Renfrew six hundred and fifty dollars, with interest at the rate of ten per cent per annum payable annually from date until paid.            W. M. WILLIS.

"$350.            HASTINGS, NEBR., February 26, 1886.

"On or before the 26th day of February, 1887, for value received, I promise to pay to the order of Sylvester Renfrew three hundred and fifty dollars, with interest at

the rate of ten per cent per annum, payable annually, from date until paid.                    W. M. WILLIS."

There is now due the defendant from the plaintiff rent for 1886 and 1887, as follows:

| | | |
|---|---:|---:|
| The sum of $1,710, with interest at seven per cent per annum from the first day of January, 1888; total............................ | | $1,879 20 |
| There is due on the $650 note as follows: | | |
| Principal............................... $650 00 | | |
| Interest at ten per cent from February 26, '86, to May 20, '89, the sum of .... .......................... 210 34 | | |
| Total...................................... | 860 34 | |
| There is due on the $350 note as follows: | | |
| Principal................................. $350 00 | | |
| Interest from February 26, 1886, to May 20, 1889, at ten per cent..... 110 82 | | |
| Total .................................. | 460 82 | |
| There is due on the $200 note as follows: | | |
| Principal................................. $200 00 | | |
| Interest from April 9, 1887, to May 20, 1889, at ten per cent per annum..................................... 42 21 | | |
| Total.................................. | 242 21 | |
| Making due from the plaintiff to the defendant, from all sources, the total sum of........ | | $3,442 57 |
| There has been paid on said indebtedness from time to time the sum of......................... | | 2,645 61 |
| Leaving a balance due to the defendant from the plaintiff in the sum of...................... | | $796 69 |

For which amount, with costs of suit, this defendant asks judgment.

The plaintiff replied, first, that according to the terms of the lease as set forth in plaintiff's petition, the rent to

be paid by the plaintiff to the defendant for the premises therein described, was $800 in cash and ten tons of hay, cut and delivered to the defendant in the stack; but that on account of loss of hay during the first year the said premises were occupied by the plaintiff under said lease, and by reason of other losses sustained by the plaintiff in the management of said premises, the said lease was changed like this, to-wit, the defendant releasing said Willis from his obligation under said lease to cut and deliver to the said defendant the ten tons of hay as provided in said lease.

Second—Plaintiff further replying says, that at the end of the first year said written lease was abandoned and by mutual agreement between the plaintiff and the defendant held for naught, and that a new oral lease for the same premises was entered into, whereby the plaintiff was to pay for the use of said premises the sum of $800 and no more; that said sum of $800 has been fully paid for the year expiring March 1, 1888.

Third—Plaintiff further replying says that the $200 note mentioned in the defendant's answer was given by the plaintiff to the defendant for money borrowed by the plaintiff of and from the defendant; that said note was secured by a chattel mortgage upon a large amount of personal property, to-wit, live stock belonging to said plaintiff; that on the 8th day of March, 1888, said live stock was sold at public sale, the proceeds of the sale thereof, negotiable promissory notes, whereby the plaintiff turned over and delivered to the said defendant in full liquidation of the said note of $200, whereby the same was and has been fully paid and satisfied.

Fourth—Plaintiff further replying says, that the two notes, one for $650 and the other $350 as described and set fourth in defendant's answer, were made and delivered by the plaintiff to the defendant, and were secured by real estate mortgage upon certain real estate situated in the city

of Hastings, Adams county, Nebraska; that on the 16th day of August, 1889, said defendant instituted in the district court of Adams county, Nebraska, a proceeding for the purpose of foreclosing said mortgage, whereby to satisfy the said notes; that said case of foreclosure on said notes is still pending and undetermined in this court; that the property secured by said mortgage is amply sufficient in full to more than satisfy the principal and interest on said notes, together with the costs of the foreclosure.

The plaintiff denies each and every other allegation in the defendant's answer contained.

On May 25, 1889, there was a trial to a jury, with a verdict for the plaintiff for $838.17. The defendant's motion for a new trial being overruled, judgment was entered on the verdict.

The plaintiff in error assigns the following for review:

1. Error in allowing any evidence to the jury for the reason that the petition fails to state a cause of action.

2. In excluding defendant's exhibit 4.

3. The verdict is contrary to law and not supported by any evidence.

The record discloses the history of this action in a clouded multiplicity of accounts between two neighbors, landlord and tenant, running through four years, under the contract set forth. The balance claimed by the defendant on the trial was $796.69, and the verdict for the plaintiff was $838.17, though the amount claimed was $1,772.22. However scrupulously or carelessly the accounts of their transactions were cast up and rendered by these parties to each other, will not be the subject of review. Those questions of fact may be again considered by a jury, and the questions of law only are to be considered here. The first objection is believed to be well taken, that the petition fails to state a sufficient cause of action.

It appears at the opening of the trial the defense objected to the introduction of evidence for that reason. The

answer of the defendant did not waive that defect.   Nor
are the defects in the substance of the petition cured by the
answer.    If the petition failed to state a sufficient cause of
action, it will not support the present judgment.   We find
that the former decisions of the court support these propo-
sitions: *Farrar v. Triplett,* 7 Neb., 240; *Haggard v. Wal-
len,* 6 Id., 272; *O'Donohue v. Hendrix,* 13 Id., 255;
*Thompson v. Stetson,* 15 Id., 112.

The petition, then, must stand on its allegations, unaided
by any other pleading or proceeding in the case, and to it
alone our attention is directed.   The right of the defend-
ant, after judgment, to object to the petition on this ground
will not be questioned.   The objection on the trial was
urged that if the payments were in fact made, as set out
in the petition, from October 8, 1887, to April 7, 1888,
they were voluntary payments, without any allegation that
any part of the $3,348.22 was made by mistake of the
plaintiff, or superinduced by any fraud practiced by the
defendant.   If the payments were voluntary, and if it does
not appear upon what account, claim, or pretext $1,772.22
of the total sum was paid over to the plaintiff in error's
testator in his lifetime, it is then clear that the petition in
this case will not support the judgment, on the ground
that voluntary payments cannot be recovered back in an
action at law. (*Herman v. Edson,* 9 Neb., 152; *Foster v.
The County of Pierce,* 15 Id., 48.)

The allegation of the petition that these payments were
made at the special instance and request of the defendant,
by virtue of the contract set forth, when no part of the
sum of the verdict was claimed to be due on the contract,
is neither a device nor an evasion, but in this case is simply
a negation, with the strong presumption that, if paid at all,
the money was voluntarily paid.   In the absence of alle-
gation or proof to maintain the obligation of such pay-
ments, the first assignment of error is sustained.

The second assignment is for error in excluding a mem-

orandum of settlement between the parties, in the life-
time of the defendant's testator, and in his handwriting.
While such memorandum might~have been useful and
proper to refresh the memory of the witness who testified
to its purport, we think it was properly excluded as a set-
tlement between the parties, with such instruction to the
jury, and is overruled.

From what has been said, the third assignment, that the
verdict is contrary to law, and is not supported by the evi-
dence, must be sustained, and the judgment reversed. The
cause is remanded to the district court for further proceed-
ings in accordance with law.

REVERSED AND REMANDED.

THE other judges concur.