COX & CORNELL v. PEORIA MANUFACTURING COMPANY.

FILED NOVEMBER 9, 1894.    No. 5372.

1. **Waiver of Exception to Ruling on Demurrer:** PLEADING. The filing of an answer after a special demurrer to the petition is overruled is a waiver of an exception to the decision of the court on the demurrer.

2. ———: ———. Answering over after the overruling of a general demurrer to the petition is not a waiver of the defect that the petition fails to state a cause of action.

3. **Action Before Maturity of Debt:** ATTACHMENT. An action can only be maintained on a debt prior to the maturity thereof in the exceptional cases specified in section 237 of the Code.

4. **Attachment.** Such an action cannot be prosecuted to judgment, unless a writ of attachment has been allowed, and property seized thereunder.

5. **Affidavit for Attachment:** CLAIM NOT DUE. Where a cred-

itor brings an action on a claim before it is due, and sues out an attachment, it is not necessary that he should set up in the petition the fraudulent acts of the defendant which are relied upon as the basis for the granting of the attachment, but the same should be set forth in the attachment affidavit.

6. **Order of Attachment on Claim Not Due:** PRESUMPTION OF REGULARITY. Where a district judge allows an order of attachment on a debt not due, the presumption is, in the absence of a contrary showing, that the same was made while the court was in session, and especially so where the judge, at the time of the granting of the writ, was presiding at a regular term of the district court in which such action was brought.

7. **District Courts:** JUDGES. A district judge has the power to hold court in a district other than the one for which he was elected, and it will be presumed, in case he does so, that it was at the instance of the judge of the proper district.

8. **Attachment:** PARTNERSHIP PROPERTY: EXEMPTIONS: FRAUD. Where the members of an insolvent partnership divide between themselves all the firm assets, without regard to the interest or share of the respective partners therein, with the intention and for the sole purpose of enabling each to claim the portion so transferred to him as exempt against the creditors of the partnership, it is a sufficient ground for an attachment, since such transfer tends to hinder and delay the firm creditors in the collection of their claims.

ERROR from the district court of Saunders county. Tried below before BATES, J.

The opinion contains a statement of the case.

*Simpson & Sornborger*, for plaintiffs in error:

A judge has no authority to allow a writ of attachment outside of his own district, except upon a showing of absence of the judge of the district, or other disability. (*Ellis v. Karl*, 7 Neb., 381.)

Reference was made in the brief to the following cases on the question of fraud and the right of each partner to claim property as exempt after division of the firm assets: *O'Donnell v. Segar*, 25 Mich., 376; *Mortly v. Flannigan*,

38 O. St., 404; *Stewart v. Brown*, 37 N. Y., 350; *Russell v. Lennon*, 39 Wis., 570; *Worman v. Giddey*, 30 Mich., 151; *Blanchard v. Paschal*, 68 Ga., 32; *Skinner v. Shannon*, 44 Mich., 86; *O'Gorman v. Fink*, 57 Wis., 649; Thompson, Homesteads & Exemptions, sec. 211.

*Atkinson & Doty*, contra.

NORVAL, C. J.

On the 7th day of January, 1891, Cox & Cornell, a firm doing business at Wahoo, executed and delivered to the Peoria Manufacturing Company a promissory note in the sum of $743.90, with eight per cent interest from date, payable on the 1st day of May following. On the 30th day of March, 1891, this action was commenced by the defendant in error in the district court of Saunders county to recover the sum secured by said promissory note although the same was to become due thereafter. At the time of the commencing of the action an affidavit for an attachment was filed with the clerk of the said district court, and upon the same day the following order authorizing a writ of attachment to issue in said cause was entered upon the journal of said court, to-wit:

"Now, on this day, upon application of the plaintiff, the Peoria Manufacturing Company, and it appearing from the affidavit of C. A. Atkinson, an attorney of record of said plaintiff in said case, that the claim of the Peoria Manufacturing Company is just, and that there is cause for granting an attachment in the sum of $759.90, and $50 probable costs in the case, an attachment is therefore allowed to issue in this case, upon the plaintiff giving an undertaking for the sum of $1,500, with approved security, as required by law.   WILLIAM MARSHALL,

"*Judge.*"

On March 31, 1891, the defendants filed a motion to dissolve the attachment on the following grounds:

1. That the judge allowing the writ of attachment was without jurisdiction to allow the same.

. 2. That the names of the defendants are not set forth in the affidavit for attachment, nor in the order of attachment, nor elsewhere in the record.

3. The facts stated in the affidavit are insufficient.

4. That the affidavit is untrue.

The motion was heard upon the affidavits of the defend- . ants and the counter-affidavits submitted by the plaintiff, and on June 1, 1891, the court overruled said motion, to which ruling the defendants took exception.

On June 3, 1891, the defendants filed a demurrer to the petition, alleging:

1. That there is a defect of parties defendant.

2. That no defendant is named in the petition or proceedings.

3. That the petition does not state sufficient facts to constitute a cause of action.

This demurrer was on the same day overruled, and subsequently each of the defendants filed a separate answer alleging, in substance and effect, that the firm of Cox & Cornell had been dissolved, by mutual consent of all the members thereof, more than a month prior to the institution of this suit, and that notice of dissolution was given plaintiff within a week after the same occurred, and praying that the action be dismissed, or that the plaintiff be required to prosecute the same against the persons formerly composing said partnership, to-wit, Joseph M. Cox and George H. Cornell.

To each answer the plaintiff interposed a general demurrer, which was by the court sustained, and judgment was entered in favor of the plaintiff on January 25, 1892, for the sum of $808.99, and the sheriff was ordered to sell the attached property, and apply the proceeds arising therefrom in satisfaction of said sum, interest and costs.

We will first consider whether there was any error in the

overruling of the defendants' demurrer to the petition. As elsewhere stated, after the decision upon the demurrer, the defendants each filed a separate answer. They thereby waived the exception to the decision of the court in overruling such demurrer, except as to the third or last ground of the demurrer, namely, that the facts stated in the petition do not constitute a cause of action. The filing of an answer after the overruling of the demurrer is not a waiver of a defect in a petition, that the pleading fails to state a cause of action. (*Singer Mfg. Co. v. McAllister,* 22 Neb., 359; *O'Donohue v. Hendrix,* 13 Neb., 255; *Farrar v. Triplett,* 7 Neb., 237; *Burlington & M. R. R. Co. v. Kearney County,* 17 Neb., 511; *Renfrew v. Willis,* 33 Neb., 98.) Is the petition sufficient? It alleges the incorporation of the plaintiff, and that Cox & Cornell was a partnership doing business at Wahoo. The petition, after setting out a copy of the instrument sued on, avers the execution and delivery, by the defendants below to the plaintiff, of a promissory note for $743.90, bearing date January 7, 1891, and maturing May 1, following, drawing interest at the rate of eight per cent per annum from date; that no part of said note had been paid; that the same will be due on the 1st day of May, 1891, and that on said day there will be due and payable thereon from the defendants to the plaintiff the sum of $759.90. Counsel for the plaintiffs in error, in discussing the sufficiency of the pleading in the brief, say: "At first blush such a declaration must be held to be bad, because the first principle underlying a right of plaintiff to recover from the defendants is that something is due from one to the other; and an affirmative declaration that the something is not due, unexplained, negatives the right to recover." Ordinarily, an action cannot be brought on a debt prior to maturity thereof; but our statute has created an exception to the general rule. By section 237 of the Code of Civil Procedure it is provided: "A creditor may bring an action on a claim before it is due, and have an

attachment against the property of the debtor, in the following cases: First—Where a debtor has sold, conveyed, or otherwise disposed of his property, with the fraudulent intent to cheat or defraud his creditors, or to hinder or delay them in the collection of their debts. Second—Where he is about to make such sale, conveyance, or disposition of his property, with such fraudulent intent. Third—Where he is about to remove his property, or a material part thereof, with the intent or to the effect of cheating or defrauding his creditors, or of hindering and delaying them in the collection of their debts." It is plain from the reading of the foregoing provisions that when a debtor has committed any one of the fraudulent acts enumerated in the section quoted his creditor may maintain an action on the claim before the same is due, when aided by attachment, but that in all other cases an action cannot be properly commenced until the debt has matured. (*Seidentopf v. Annabil,* 6 Neb., 524; *Green v. Raymond,* 9 Neb., 295; *Caulfield v. Bittenger,* 37 Neb., 542.) Although writs of attachment are allowable for debts not due in the exceptional cases of fraudulent conduct on the part of the debtors above enumerated, yet it is expressly provided in section 242 of the Code that " The plaintiff in such action shall not have judgment on his claim before it becomes due." The original affidavit for an attachment in the case under review alleges the existence of the first and third grounds of fraud specified in said section 237, which was *prima facie* sufficient to entitle the plaintiff below to institute his action, on the note, even before the maturity thereof. It appears from this record that at the time the demurrer to the petition was filed, and the ruling was given thereon, the note, which is the basis of the suit, had matured, and this fact was disclosed by the face of the petition itself. The petition, therefore, at that time showed a present existing indebtedness of the defendants to the plaintiff, and a present right of action.

It is argued that the petition is defective in that it omitted to set forth the fraudulent conduct of the defendants. We are not aware of any provision of statute, or rule of practice, which requires that, in order to maintain an action upon a claim before due, the petition must set out the fraudulent acts of the defendant which are relied upon as the basis for the allowing of an attachment. All the statute requires, before an attachment shall be granted, or allowed, in an action on a demand before the same has matured, is that an affidavit be filed, stating the nature and amount of plaintiff's claim, that it is just, when the same will become due, and the existence of one of the grounds for attachment mentioned in section 237 of the Code. (See Code, sec. 238.) There is no necessity for setting forth the grounds for an attachment in the petition. Even should they be therein alleged, the action could not be prosecuted to judgment, unless an attachment has been granted and issued, and property seized thereunder. The right to prosecute an action on a debt before due depends upon the granting of an order of attachment; and the issuance of the writ in such a case is discretionary with the court or judge. (*Seidentopf v. Annabil, supra.*) If the order is refused, the action must be dismissed. (Code, sec. 239.) We are satisfied that the petition is not defective because of its failure to allege the fraudulent conduct or purpose of the defendants, and that there was no error in the decision of the trial court in overruling their demurrer.

We next consider the contention of the plaintiff in error, that the court erred in refusing to discharge the attachment. The second and third grounds contained in the motion to vacate the attachment not being now relied upon will be deemed waived, and hence the first and fourth grounds of the motion alone will be examined. Was the order of attachment granted without jurisdiction or authority? This court will take judicial notice of the fact that on and prior to the 30th day of March, 1891, the date on which the writ

of attachment was allowed, Saunders county was one of the counties comprising the fourth judicial district, and that the Hon. William Marshall was one of the judges of said district, and on the date aforesaid was holding a regular term of court in said county of Saunders. We know, too, that the governor on that day approved an act of the legislature, with an emergency clause, reapportioning the state into judicial districts, by which law Judge Marshall became one of the judges of the sixth district, and Saunders county became one of the counties comprising the fifth judicial district and that the Hon. Edward Bates was at the time the judge thereof. Counsel for plaintiff in error insist that this is a case of a judge of the sixth district assuming to allow an order of attachment for a debt before due in an action brought in a county of the fifth district, without a showing of absence, or other disability, of the judge of the latter district. The record does not bear out such contention. It is not disclosed that Judge Marshall was in the sixth district when the order was allowed, or that the same was made at chambers. In the absence of a showing to the contrary, it will be presumed that the order in question was made while the district court of Saunders county was in regular session, and especially so since Judge Marshall was presiding over the district court of said county on the day the attachment in question was granted. (*Bostwick v. Bryant*, 113 Ind., 448; *Carmody v. State*, 105 Ind., 546.) The constitution and statutes of this state authorize and empower district judges to interchange and hold courts for each other (*Drake v. State*, 14 Neb., 535); and, nothing to the contrary appearing on the face of the record under review, we must presume that Judge Marshall was holding the term of court in Saunders county at the request, or instance, of Judge Bates when the order of attachment was allowed. It is suggested that nowhere in the record is it disclosed that Judge Bates was absent from his district, or that he was sick, or unable to act. We reply that the va-

lidity of the order in no manner depends upon the exist-
ence of such fact. The statute places no limitation upon
the power of a district judge to hold court for the judge of
another district, and we have no right to do so. It logic-
ally follows from the views above expressed that there was
no want of jurisdiction in granting the writ, but the same
was as valid and binding as though it had been allowed by
Judge Bates.

It remains to be considered whether the last ground
contained in the motion to dissolve the attachment was
well taken. There is absolutely no controversy as to the
facts. It appears that the firm of Cox & Cornell was com-
posed of Joseph M. Cox and George H. Cornell, and that
the said firm continued in business up to about the 20th
day of February, 1891, when by mutual consent the part-
nership was dissolved and the property of the firm, con-
sisting chiefly of wagons and buggies, and for which the
note sued on was given in part payment, was divided be-
tween the partners with the intention, and for the sole pur-
pose, of enabling each, if possible, to claim the property as
transferred to him as exempt under the exemption laws of
the state, and thereby defeat the collection of plaintiff's
claim. At the time of the division of the property as
aforesaid the firm, and each member thereof, was insolvent.
Subsequently, judgments were recovered against Cox &
Cornell by two of their creditors, upon one of which an
execution was issued and levied upon certain property which
had been divided as aforesaid between the members of the
firm; and the said Joseph M. Cox and George H. Cornell
each filed an affidavit in the court from which the execution
issued, claiming the property so levied upon as exempt.
There is no evidence that the property was divided between
the partners in proportion to the share or interest of each
in the firm assets. The question for consideration is
whether there was a disposition of the property of the
partnership with fraudulent intent to cheat and defraud the

creditors of Cox & Cornell.    Stated differently, have part-
ners the right to divide between themselves the firm assets
where such division is made with the avowed purpose of
preventing, hindering, or delaying creditors from collecting
their claims from the property of the partnership?    We
think the answer must be in the negative.    Partnership ef-
fects are liable for the payment of the debts against the
firm.    The interest of each partner is his moiety or share
of the assets remaining after the partnership debts are set-
tled.    In other words, each member of the firm holds his
interest in the property of the partnership subject to a trust
for the firm creditors.    Neither partner, nor all of them
together, can lawfully, on the dissolution of the firm, trans-
fer or otherwise dispose of the assets, where the purpose in
so doing is to place the same beyond the reach of the part-
nership creditors, or to hinder or delay them in the collec-
tion of their debts.    In *Roop v. Herron*, 15 Neb., 73, a
case similar in the controlling features to the one before us,
the court says: "A partnership is a distinct entity, having
its own property, debts, and credits.    For the purposes for
which it was created it is a person, and as such is recog-
nized by law.    And the credit being given to the firm—in
effect to the partners jointly, it would seem but justice that
the goods so purchased should not be diverted to the use of
an individual partner, when such diversions will have the
effect to defraud the creditors of the firm.    It may be said
the goods having been sold to the firm, the creditors thereby
surrendered all control over them and trusted alone to the
solvency of the debtor firm for payment; that the delivery
being complete and without conditions, the debtor firm could
make what disposition of the property it saw fit.    In a sale
to an individual upon credit, in addition to the agreement
to pay the debt, there is an implied agreement that the debt-
or's property shall, if necessary, be applied for that pur-
pose.    Now, if the debtor attempts to divert his property
from this purpose,—to place it beyond the reach of his cred-

itors,—the law at once authorizes its seizure by attachment to prevent the creditor from being defrauded. So with property held by a firm, there is an implied agreement that all its assets shall, if necessary, be applied to the payment of the firm debts; and any diversion of such assets of an insolvent firm is a fraud upon its creditors. In other words, the partnership property is a trust fund to the extent of the partnership liabilities, and to be applied in the satisfaction of the same. (*Egberts v. Wood*, 3 Paige Ch. [N. Y.], 517; *Innes v. Lansing*, 7 Paige Ch. [N. Y.], 583; *Whitewright v. Stimpson*, 2 Barb. [N. Y.], 379.) This being so, can the members of an insolvent firm, by simply assigning their interest in the property, defeat this trust and change the character of the property from partnership to that of an individual? If so, it affords an easy mode of defeating partnership creditors. The creditors might say, we gave the credit because the firm seemed to possess sufficient assets to pay its debts; and if in good faith they are applied to that purpose, they are sufficient. The right of the members of a firm, who as a firm have induced others to give them credit, to change the firm property to that of an individual member of the firm, without the consent of creditors, is very doubtful." We are satisfied that the dividing of the assets in the case at bar, in severalty between the partners for the purpose intended, amounted to such a fraudulent disposition of the property within the meaning of the statute as to lay the foundation for suing out the attachment. No one will dispute that, inasmuch as the statute of exemptions is lawful, it is not a fraud for a debtor to avail himself of its provisions by disposing of his unexempt property for the purpose of investing the proceeds arising therefrom in property which is exempt under the statute. But that is not the case before us, which must be plain to every one, since there has been no converting of the assets of the firm into other property. On the other hand all the effects have been

transferred to the individual partners, with the view of enabling each one to claim and hold as exempt the part which came into his hands; and this was done confessedly for the sole purpose of cheating and defrauding the firm creditors.    We are of the opinion, therefore, that the charge of fraud set up in the attachment affidavit is fully sustained by the evidence, and that the court did not err in refusing to dissolve the attachment.

JUDGMENT AFFIRMED.