GEORGE W. BOYER ET AL. V. RICHARD RICHARDSON ET AL.

FILED JUNE 15, 1897. No. 7190.

1. **Election as to Counts:** HARMLESS ERROR. The error, if any existed, in requiring a plaintiff to elect between two counts in his petition evidently referring to the same cause of action, is harmless and not a ground for reversal when the evidence on the trial affirmatively discloses that the count abandoned by the election could not under the facts lead to a recovery.

2. **Negotiable Instruments:** INDORSEMENT: PRINCIPAL AND AGENT. The indorsement of a negotiable instrument "for collection and account," of the indorser, merely constitutes the indorsee the agent of the indorser for the purpose of collecting and remitting the proceeds. It passes no title to the indorsee and confers no authority on him to transfer the instrument by sale or indorsement to another so as to charge former indorsers under the law merchant.

3. **Voluntary Payment:** REPAYMENT. Money paid to a third person in discharge of the debt of another cannot be recovered back when the payment was made voluntarily, without any legal obligation on the payor, without any duress, compulsion, or deceit, without any previous request from the debtor, and without any subsequent promise of repayment.

4. ———: EVIDENCE. Evidence *held* to sustain a finding that the payment in this case was such a voluntary payment.

5. **Judgment: Findings: Review.**  A judgment will not be reversed for
want of findings on all the issues, when the findings made required,
independently of the result on other issues, the judgment ren-
dered.

ERROR from the district court of Saunders county.
Tried below before WHEELER, J.  *Affirmed.*

*McCoy & Olmsted,* for plaintiffs in error.

*Good & Good, contra.*

IRVINE, C.

The plaintiffs constitute the firm of George Boyer,
McCoy & Co., engaged in the live stock commission busi-
ness in South Omaha.  They are the successors of the
Boyer-Shelly Company, which was the style of the firm
at the time of the events in controversy.  The defendants
constituted the firm of Richardson, Hughes & Co., which
conducted, it would seem in connection with other busi-
ness, a stock ranch in Saunders county.  They, or some
of them, resided in Franklin, Pennsylvania.  Richardson,
Hughes & Co. had sold a number of cattle to four persons
named Wilson.  In payment for these cattle they took a
note signed by the Wilsons, payable to the firm of Rich-
ardson, Hughes & Co., for $3,200, dated October 30, 1890,
and payable twelve months after date.  This note was
secured by chattel mortgage on the cattle, the mortgage
containing a covenant by the Wilsons that when said
cattle should be removed or shipped for sale they should
be consigned to the Boyer-Shelly Company for sale on
commission.  The Boyer-Shelly Company had negotiated
the sale to the Wilsons, and it would seem that the object
of the covenant was two-fold,—to secure the Boyer-Shelly
Company commissions for reselling the cattle, and to en-
able them to protect Richardson, Hughes & Co. in their
security.  In August, 1891, the Wilsons shipped a num-
ber of the cattle to South Omaha, but consigned them
to Gasman & Dudley instead of to the Boyer-Shelly

Company. The ranch in Saunders county was then under the management of one Harry Hughes, who was not a member of the firm of Richardson, Hughes & Co., and whose precise authority is in dispute. Gasman & Dudley notified Harry Hughes by letter that they had the proceeds of the cattle and held them to apply on the note. About the same time the Boyer-Shelly Company learned of the shipment and notified Hughes thereof by wire. Hughes went to South Omaha, but was unable to get possession of the proceeds of the sale of the cattle because the note was not there. Richardson, Hughes & Co. had discounted the note with the International Bank of Franklin, Pennsylvania, indorsing the same with a waiver of demand, notice, and certain other rights, and the International Bank then held the note. In a manner not made very clear by the evidence, Harry Hughes communicated the facts to Richardson, Hughes & Co. in Franklin, and the result was that the International Bank sent the note to the Union Stock Yards National Bank, at South Omaha, indorsed as follows: "For collection. Account of International Bank, Franklin, Penna. H. Bleakley, Cashier." Thereupon Gasman & Dudley paid to the Union Stock Yards Bank $1,533.29, being the proceeds of the sale of the cattle, and this payment was indorsed on the note. Then the Boyer-Shelly Company paid the remainder of the note to the Stock Yards Bank, which surrendered the note and mortgage to them. Several months later $800 was realized by the Boyer-Shelly Company on another shipment of cattle by the Wilsons, and this amount was credited on the note. The present suit was then brought to recover the amount paid by the Boyer-Shelly Company, less the $800. The original petition was in one count, alleging the note and indorsements; alleging a sale of the note by Richardson, Hughes & Co. to Bleakley, cashier, and a sale by Bleakley, cashier, to the Boyer-Shelly Company, and praying to recover on the indorsement of Richardson, Hughes & Co. An amended petition was filed containing this count, with

the added averment that the restrictive indorsement by Bleakley was made by mistake and was intended for a general indorsement. This count was followed by another conforming to the old action for money paid to the use of another, and alleging that the payment was made by the Boyer-Shelly Company to the International Bank at the special instance and request of Richardson, Hughes & Co. The court, on motion of the defendants, required the plaintiffs to elect between the two counts. The plaintiffs elected to proceed on the second count,— that for money paid. To this count a general denial was filed. The case was tried to the court without a jury. Special findings were made and judgment entered for the defendants. The plaintiffs prosecute this proceeding to reverse that judgment.

The first question argued in the briefs relates to the propriety of the court's action in requiring an election between the two counts of the petition. It is quite evident from the petition itself, especially from the prayer, that both counts relate to the same transaction. The Code contemplates a plain, direct statement of facts constituting a cause of action, and it is unnecessary to frame pleadings so as to conform the case to any of the old common-law writs. A resort to double counts on the same cause of action is therefore unusual under the Code. Whether or not it is permissible, whether or not these two counts were inconsistent, and, if so, whether the proper remedy was by motion to require an election, are points argued at length, but which we do not think it necessary to consider, because the evidence introduced on the trial affirmatively disclosed such a state of facts as would preclude a recovery on the first count. This was the one which the plaintiff abandoned, and inasmuch as it is so affirmatively disclosed that there cannot be any recovery upon it, if it was error to require the plaintiffs to elect, their election to proceed under the second count rendered the error harmless. As before stated, the indorsement by the International Bank to the Union Stock

Yards Bank was special and restricted,—for collection only. This passed no title to the note, and merely constituted the Union Stock Yards Bank the agent of the International Bank to collect the note and remit the proceeds. The evidence shows that the indorsement was not made through any mistake, but was made deliberately for the purpose expressed. There could be no reformation, therefore, and standing as a restrictive indorsement, it conferred no authority on the Union Stock Yards Bank to sell the note or to deal with it in any way except by collecting it and remitting the proceeds to the International Bank. The Boyer-Shelly Company had notice of the want of ownership of the Stock Yards Bank when they paid the money and took the note. They were bound to know that they were not purchasing it and were getting no title by virtue of the law merchant, so that no cause of action accrued to them under the law merchant upon the indorsement of Richardson, Hughes & Co.

The next question presented is the sufficiency of the evidence. The decision of the case on its merits must turn on the precise nature of the transaction of August 26, when the Boyer-Shelly Company paid the money to the Union Stock Yards Bank on behalf of the plaintiffs. The evidence tends to show that Harry Hughes was the general manager of the plaintiffs' business in this state; that he had frequently made notes for the firm and discounted them; that he had had such transactions with the plaintiffs; that he accepted payments, discharged mortgages, and in general exercised a sufficiently wide authority, with the consent of the defendants, to at least estop the latter from alleging his want of authority in this matter; that it was at his request, and in pursuance of a distinct agreement that Richardson, Hughes & Co. should remain liable to the plaintiffs, that the plaintiffs advanced the money to pay the note. On the other hand, the evidence on behalf of defendants tends to show that Hughes' authority in such matters was specially conferred in each instance, and that he had no special au-

thority in this transaction.    Were the only question that
of Harry Hughes' authority, however, we would not hesi-
tate to say that his ostensible authority was such that
these special restrictions not communicated to the plaint-
iffs could not now be urged against them.    But assuming
that his authority was general, the defendants' evidence
is to the effect that while Hughes knew of the payment
by the Boyer-Shelly Company, still it was not made at
his request, but was made voluntarily by the Boyer-
Shelly Company for the purpose of securing to them-
selves the commissions to be realized from the sale of the
remaining cattle, the shipment to Gasman & Dudley hav-
ing warned the plaintiffs that they were likely to lose
these sales and the possession of the note and mortgage
giving the plaintiffs the means of enforcing shipments
to them.    In this view of the evidence, which was that
taken by the district court, the inference is warranted
that the plaintiffs were looking to the proceeds of the
sale of the remaining cattle for reimbursement, and not
to Richardson, Hughes & Co.    It is elementary law that
in order to recover money paid to the use of another,
where the party paying was under no obligation so to do,
the payment must have been moved by a previous request
from the party to whose use the money was paid.    In
some cases a previous request will be implied, as where
the money was obtained by duress either of person or
property, or by deceit, or where there has been a subse-
quent express promise to repay the money, as was the
case in *Stuht v. Sweesy*, 48 Neb., 767.    But where the pay-
ment is entirely voluntary,—where there is no subsequent
promise to repay,—a previous request must be proved.
In the very elaborate briefs a large number of cases in-
volving different phases of this doctrine are reviewed,
but the general principles above stated are so well settled
that it would be useless to comment on the numerous
cases cited.    The plaintiff, however, places so much stress
on the case of *White v. National Bank*, 102 U. S., 658, that
it deserves more than passing attention.    In that case
15

the Miners National Bank of Georgetown, Colorado, was the holder of certain accepted drafts, and by a restrictive indorsement, held to be equivalent to an indorsement for collection, the drafts were transferred to White, who placed to the credit of the bank the full value of the drafts, and the bank availed itself of this credit by checking against it. The court held that White, by the terms of the indorsement, became merely the agent of the bank to collect the drafts, and there being no liability upon the indorsement, there could be a recovery by White for money paid or money lent. But the case is very different from that we are considering. Both parties understood that a sale of the drafts was being effected. The money was advanced in pursuance of that understanding, which was equivalent to a request by the bank, and the bank thereafter availed itself of the advancement. In this case, taking the evidence in the light most favorable to the defendants, which the finding requires us to do, there was no previous request, express or implied. The money was paid, not for the accommodation of the defendants, but for the benefit of the plaintiffs themselves. It was paid to the International Bank, and not to the defendants, so that the defendants were without power to refuse it or return it. The writer confesses that he would be better satisfied with the result had the court found in accordance with the plaintiffs' testimony. But there is sufficient evidence to sustain the finding as made.

Complaint is made that the judgment is not supported by findings which the plaintiffs conceive to be essential to a determination of the case in favor of the defendants. We think, however, that the findings are ample to sustain the judgment. They cover quite at large the salient facts as we have stated them, and find that the plaintiffs, "to secure their commission on the remainder of the cattle and require the defendants Wilsons to ship the same to them, these plaintiffs, Boyer-Shelly Company, without any authority from either of these defendants or the holder of the note, voluntarily paid the remainder due on

said note and took the same into their possession; but at their request the same was not canceled or marked paid by the cashier of the South Omaha National Bank, to whom the same was made;" and further: "That the defendants, Richardson, Hughes & Co., have at no time obligated themselves or promised to pay said note, except by their indorsement to the International Bank of Franklin, Pennsylvania." There are, therefore, distinct findings that the payment was voluntary,—not moved by the previous request of the defendants,—and that they have not since promised to repay the money. These are all the findings, in connection with the general facts of the case, which are necessary to require a judgment for the defendants, and the court was not compellable to proceed to determine and make findings of other issues, which become immaterial in view of the findings already made.

AFFIRMED.