FARMERS & MERCHANTS IRRIGATION COMPANY, APPELLANT,
v. JOHN H. BRUMBAUGH, APPELLEE.

FILED MAY 7, 1908.   No. 15,165.

1. **Payment Under Mistake:** ACTION: PLEADING. "Money paid by mistake may, in some cases, be recovered back in an action at law, but in such cases the mistake must be pleaded and proved." *Renfrew v. Willis*, 33 Neb. 98.

2. **Trial:** WATERS: WITHDRAWING QUESTION FROM JURY. Where the evidence shows that a party who has purchased a water right from an irrigation ditch company has voluntarily paid one year's maintenance charges, and there is other evidence tending to show that such purchaser at the time of said purchase agreed to pay an annual maintenance fee of a like amount as that voluntarily paid, and the company brings suit for subsequent maintenance fees claimed to be due and unpaid, it is error for the trial court to withdraw the question from the jury.

3. **Evidence** examined, and *held* insufficient to sustain the verdict returned by the jury.

APPEAL from the district court for Dawson county: BRUNO O. HOSTETLER, JUDGE. *Reversed.*

*E. A. Cook,* for appellant.

*H. M. Sinclair* and *Warrington & Stewart, contra.*

FAWCETT, C.

The petition sets out three causes of action. The first and second are upon promissory notes given as a part of the purchase price of a perpetual water right for 80 acres of land in Dawson county. The third is for moneys claimed by plaintiff to be due, at the rate of 50 cents an acre per annum, for maintenance fees. The defense to the first and second causes of action is that plaintiff has wholly failed, neglected and refused to furnish defendant any water, although often requested so to do; that plaintiff has sold water rights above the land of defendant far

44

in excess of the capacity of its ditch; that, by reason of the smallness of its dimensions and capacity, the ditch as constructed does not, and cannot at any time, carry water sufficient to irrigate more than 1,000 acres of land, whereas there are 8,000 acres of land above defendant's land for which plaintiff has sold water rights; that, by reason thereof, plaintiff is wholly unable to supply water for defendant's lands when needed for irrigation purposes, and has been so unable at all times since the making of the agreement between plaintiff and defendant therefor, and that defendant's crops have been left wholly dependent upon the natural rainfall. The answer further alleges that defendant has been compelled to pay one note of the series given for the purchase of the water right, and a claim of $40 for maintenance; alleges that another of the notes has been merged into a judgment which was rendered in defendant's absence, in which judgment there was included items of interest and claims for maintenance, so that said judgment was for the amount of $160. It further alleges that defendant has received no benefit of any kind, in any manner, at any time, from said ditch, and that the consideration of the notes in suit has wholly failed; and asks judgment for the amounts paid as above set out. For reply plaintiff denies that its ditch was of insufficient capacity; alleges that it never contracted and agreed to furnish water to defendant, except when there was sufficient water in the Platte river for that purpose; that it was the duty of defendant to construct and maintain laterals from the ditch of plaintiff to defendant's land, but defendant has failed to construct the same; that plaintiff did everything necessary under its contract to enable defendant to take water from the ditch, and that if defendant did not get water, when water was to be had in the Platte river, it was on account of his own neglect and carelessness, and not by reason of any fault of the plaintiff; admits defendant has paid one note and one year's maintenance fee, and alleges that the same were voluntarily paid by defendant; admits that it has recov-

ered a judgment against defendant on two of his notes, and alleges that such judgment remains wholly unpaid, and that the same was regularly obtained. There was a trial to the court and a jury, and a verdict in favor of the defendant for $107.05, being the amount of the note, with interest, which defendant alleges he had been forced to pay, but which plaintiff alleges he paid voluntarily. A motion for new trial was overruled, and judgment entered upon the verdict, from which judgment this appeal is prosecuted.

1. The evidence in the case is not of a very satisfactory character from whatever point it is viewed. It is admitted by the parties that defendant purchased from plaintiff a perpetual water right for 80 acres of land, and gave plaintiff five notes for $80 each in payment therefor, and that the two notes set out in plaintiff's first and second causes of action are two of that series of notes. The ditch was constructed. Defendant introduced a number of witnesses who testified that during the summers of 1901, 1902, 1903, and 1904 there was very little and sometimes no water in the ditch at the point where it would have to be taken out to irrigate defendant's land. Plaintiff introduced one or two witnesses who testified that there was plenty of water in the ditch. Plaintiff also contends that the evidence shows that, if there was not sufficient water in the ditch at all times, it was because there was not sufficient water in the Platte river, which was its source of supply, and that plaintiff never agreed to furnish water to any of its customers, except when there was a sufficient supply of water in the river. There is some evidence to sustain plaintiff's contention that the insufficiency of the water was the result of the scarcity of that article in the river. Defendant's witnesses testify that they went to the head of the ditch at one time to ascertain why they were not getting sufficient water, and they found that plaintiff had a number of men and teams there extending the head of the ditch across the Platte river for the purpose of throwing into the ditch

such straggling small streams of water as were still flowing in the river.   On all of these points the evidence is very meager and quite unsatisfactory.   It is contended by defendant that plaintiff agreed to furnish an abundant supply of water at all times, and that the notes were given in consideration of that promise; while plaintiff contends that it only agreed to furnish water when it was to be had from the river, and that the river dried up at certain seasons of the year, so that water could not be obtained from that source.   In the light of our former holdings, the contract which plaintiff claims it made is the only one which it could lawfully make.   In *Farmers Canal Co. v. Frank,* 72 Neb. 136, 156, we held that a ditch company is not the owner of the water which it conveys to persons for whose lands it is appropriated; that "it is only the servant of the public to carry it to the land for which it has been appropriated, and this service it is bound to perform."   We did not overlook the duty resting upon the company, for we further said: "Nor do we mean to say that an irrigation company may refuse or neglect, with impunity, to supply water to persons for whose lands it has been allowed to appropriate the same.   The law grants to corporations of this character valuable rights, but with these rights are accompanying duties to the landholders for the irrigation of whose land the rights are granted, and, if these obligations are not fulfilled, the law will interfere at the request of the party injured."   It was beyond the power of plaintiff to agree to furnish an abundant supply of water at all times.   The only agreement it could make under the statute and our former decisions would be to maintain a ditch of sufficient capacity, and in good condition, so as to be able to supply the owner of a water right with the amount of water to which he was entitled.   This amount, of course, would vary if sufficient water was not to be obtained from the river at all times to supply all the owners of water rights served by the ditch.   Moreover, it would seem that the company could not contract to give persons owning lands near the

head of the ditch a certain and definite amount of water at all times, in disregard of the rights of the persons owning property lower down, and that no owner of land under this ditch could ever be entitled to more than his *pro rata* share of the available water. The defendant bought the water right subject to the laws of the state of Nebraska governing irrigation, and must be held to have contracted with reference thereto. The testimony of defendant himself clearly indicates a familiarity with the laws and customs governing the purchase of water rights and the payment of maintenance charges, and with this knowledge, and under this state of the law, he gave his notes. This being true, then the fact, if it be a fact, that, by reason of the drying up of the river at certain seasons of the year, plaintiff was unable to furnish him with an amount of water sufficient to properly irrigate his lands, would not constitute a failure of consideration of the notes given by the defendant for the purchase of his water right. The evidence upon all of these points is so unsatisfactory that, had the judgment of the court been for the defendant simply, we would not feel like disturbing it, but there is no theory upon which the verdict which was returned by the jury and the judgment entered thereon can be sustained. If the evidence were perfectly clear and convincing that plaintiff is not entitled to recover upon his several causes of action, we would feel disposed to order a remittitur of the amount returned by the jury and affirm a judgment against the plaintiff for costs, but the evidence is not clear enough to warrant us in taking that course. We therefore leave the entire matter open for another trial, when the facts may be made to more clearly appear.

2. A careful examination of the record discloses without controversy that the note which defendant paid, and upon which the verdict was based, was paid voluntarily by defendant some time after its maturity, and that the $40 which he paid for maintenance fee was also paid voluntarily by him. The latter part of the fifth instruction,

given by the court on its own motion, tells the jury that defendant cannot "recover from plaintiff the $40 maintenance charges paid by him for the year 1901, because such payment was voluntary and made after the expiration of the season for furnishing water for 1901." That part of the instruction quoted was clearly right, but we are at a loss to understand why the court did not instruct the jury in the same manner as to the note which defendant had paid. The evidence is just as clear and uncontradicted that the note was paid voluntarily as that the $40 maintenance charge was so paid. The evidence does not disclose that plaintiff ever made any demand upon defendant for the payment of the note. In fact, there is absolutely no evidence in the record even tending to negative plaintiff's contention that defendant paid the note voluntarily, without any claim that the consideration for it had failed, or that there was any reason why he should not pay it. It stands, therefore, undisputed in this record that the payment of the note, which formed the basis of the verdict of the jury, was a voluntary payment on the part of defendant, and, such being the fact, he was not entitled to recover back from plaintiff the amount of such payment. *Renfrew v. Willis,* 33 Neb. 98; *Lathrope v. McBride,* 31 Neb. 289; *Boyer v. Richardson,* 52 Neb. 156; *Smith v. Kennard,* 54 Neb. 523. Why did defendant pay the note? If the ditch was insufficient in size to carry water to his land, he knew that fact when he paid it. If the consideration had failed, he knew it. He has failed to either plead or prove that he paid the note under duress or mistake of fact, both of which were necessary to enable him to recover back the money he had paid for a surrender of his note. In *Renfrew v. Willis, supra,* we held: "Money paid by mistake may, in some cases, be recovered back in an action at law, but in such cases the mistake must be pleaded and proved."

3. The first sentence in instruction No. 5 reads: "You are instructed that there is no evidence in this case tending to show that defendant agreed to pay plaintiff for

maintenance as set forth in the third cause of action of plaintiff's petition, and, as to such cause of action, your verdict will be for the defendant." This was error. While it is true that the evidence was not as clear and satisfactory as we would like, yet it cannot be said that there was no evidence tending to show that fact. The evidence shows that defendant paid one year's maintenance charges, and in his own testimony, as a witness, we have the following: "Q. You bought water right for 80 acres of land? A. Yes; I suppose I did. Q. When you bought that water right, was there anything said to you by any of the officers of the company in reference to your paying 50 cents an acre for an annual maintenance fee? A. I don't remember of any understanding that we had, any more than what the notes show. Q. Were you asked to pay an annual maintenance fee of $40 a year? A. I paid one. Q. How did you come to pay that? A. I suppose I was notified that there was a maintenance fee due. Q. Do you remember what year that was for? A. I would judge it was for 1901. It was the first note for maintenance that became due. Q. Had you given a note for the maintenance of that year? A. No, sir; there were no notes given for the maintenance. Q. But what you paid was for the year 1901? A. Well, it was the first note due, I think it was '01. Q. Do you mean the first annual maintenance due? A. Well, the first note due. There was a maintenance due at the same time, along with the note. I don't know what year it was for." There was some other testimony of similar character to the above, but what we have set out was sufficient to demand that the question as to whether or not defendant was liable for a maintenance fee be submitted to the jury, and it was error on the part of the court to withdraw it.

4. Plaintiff urges that the court erred in stating the issues to the jury by practically setting out in full all of the allegations of the petition, answer and reply, and insists that we should make our former criticisms of such practice binding upon the trial courts by now holding

that it is error so to do.  Our holding as to instruction No. 5 renders it unnecessary to discuss this assignment; and we pass it without consideration.

For the errors above indicated, we recommend that the judgment of the district court be reversed and the cause remanded.

CALKINS and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded.

REVERSED.